**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMGEN INC., *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**XAVIER BECERRA, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 24-3571 (JEB)** |
| **GENENTECH, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DOROTHY FINK, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 25-290 (JEB)** |

## MEMORANDUM OPINION

Litigation is not a spectator sport. If an interested party wishes to call the plays, the Federal Rules of Civil Procedure require him to seek intervention in a timely manner. He may not sit on the sidelines, watching as he believes his interests are not being adequately vindicated, and then demand to be subbed in for a rematch after the final whistle has been blown. Yet proposed intervenor Sagebrush Health Services seeks to do just that following entry of final judgment in these complex Administrative Procedure Act cases in favor of Plaintiff pharmaceutical companies. Those companies had challenged the Health Resources and Services

Administration's certification of Sagebrush's affiliate sites under a provision of the Public Health Service Act. As Sagebrush's Motions are plainly untimely, the Court must deny them.

## I. Background

Section 340B of the PHSA offers certain "covered entities" the ability to purchase drugs at steep discounts from pharmaceutical companies. See 42 U.S.C. § 256b(a)(1); Astra USA, Inc. v. Santa Clara Cnty., 563 U.S. 110, 113 (2011). One type of statutorily "covered" entity is one that receives funds for treating sexually transmitted diseases "through a State or unit of local government." See 42 U.S.C. § 256b(a)(4)(K).

By dint of such qualifying state STD funding, Sagebrush, a non-profit healthcare organization, has become a "prolific participant in the 340B program." Amgen Inc. v. Becerra, 2026 WL 2364336, at *2 (D.D.C. Aug. 14, 2026). As the Court summarized most recently, however, Sagebrush does not "provide individuals with services arising from that funding[] and order discounted drugs on their behalf." Id. Instead, its purported affiliates — distinct healthcare clinics focused on specialties that appear to have little to do with STDs, such as oncology and rheumatology — do. Id. Under a "master affiliate agreement," Sagebrush arranges for these clinics to be listed as Sagebrush STD clinic "locations" on Sagebrush's qualifying state award, and each clinic sends Sagebrush the net collections of all claims for 340B drugs used at their clinics. Id. Many of those clinics receive their own 340B certification as covered entities. Id.

Believing this arrangement unlawful, four drug manufacturers — Amgen, Inc., Eli Lilly and Company, UCB, Inc., and Genentech, Inc. — brought two related suits in December 2024 and January 2025 challenging the Government's certification of nine of these Sagebrush affiliates as "covered entities" under 340B. See Amgen, No. 24-3571, ECF No. 1 (Amgen

Compl.), ¶¶ 4–8; Genentech, No. 25-290, ECF No. 1 (Genentech Compl.), ¶ 19. Plaintiffs contended that the affiliates were ineligible for certification on multiple statutory grounds, including, as relevant here, that they received no grant funds "through a State or unit of local government." Amgen Compl., ¶¶ 146–51; Genentech Compl., ¶¶ 145–50.

Sagebrush was well aware that Plaintiffs were making this argument. Not long after Plaintiffs filed the suits at issue here, Sagebrush itself sued HRSA over its decision to deem some of its sites ineligible for 340B funding. See Sagebrush Health Servs. v. Becerra, No. 25-127, ECF No. 1 (Compl.), ¶ 48 (filed Jan. 16, 2025) (Sagebrush I); Sagebrush Health Servs. v. Kennedy, No. 25-915, ECF No. 1 (Compl.), ¶¶ 61–74 (filed Mar. 27, 2025) (Sagebrush II). Several Plaintiffs here sought and obtained leave to participate as amici in Sagebrush II. See No. 25-915, ECF No. 21 (Am. Mot.); Minute Order of May 20, 2025 (granting motion). In their amicus brief, the drug companies explained that their "pending APA challenge" in the instant litigation teed up the question of whether "[a]n entity qualifies as an STD subgrantee entitled to the 340B discount only if it is 'receiving funds . . . through a State or unit of local government.'" ECF No. 31 (Am. Br.) at 1 (quoting 42 U.S.C. § 256b(a)(4)(K) and adding emphasis). In opposing their request to participate as amici, Sagebrush directly wrestled with their position on the merits, contending that it "ignores the plain language of the statute by substituting the preposition 'from' for the statute's plain language 'through.'" Sagebrush II, No. 25-915, ECF No. 23 (Am. Opp.) at 1–2. The Government also filed a notice in Sagebrush I, attempting to link that suit to this litigation, see No. 25-127, ECF No. 14 (Not. Related Cases), as did the Plaintiffs in Sagebrush II. See No. 25-915, ECF No. 57 (Not. Related Cases). Sagebrush thus plainly knew that Plaintiffs were advancing the source-of-aid argument in this litigation.

Despite its disagreement with that position, Sagebrush did not seek to intervene in these cases. Instead, it sat by as this Court granted another covered entity whose certification was not at issue leave to intervene. See Amgen, No. 24-3571, ECF Nos. 27 (Mot. to Intervene), 32 (Mem. Op.); Genentech, No. 25-290, ECF No. 23 (Mot. to Intervene); Minute Order of Apr. 10, 2026 (granting Motion). It sat by as Plaintiffs made the source-of-aid argument one of their main themes in the litigation. See Amgen, No. 24-3571, ECF No. 35-1 (Amgen MSJ) at 2–3, 29–34; Genentech, No. 25-290, ECF No. 21-1 (Genentech MSJ) at 2–3, 32–37. It sat by as the Government filed its Opposition and Cross-Motion for Summary Judgment, even though the brief "only devoted a single paragraph" to the source-of-aid issue, see Amgen, No. 24-3571, ECF No. 49-1 (Mot.) at 8 (citing No. 24-3571, ECF No. 37 (Gov't MSJ) at 19); did not adopt Sagebrush's position that covered entities need not receive funds directly "from" the state; and indeed explicitly argued that the Government "does not certify subgrantees" that do not "individually" appear on the state's award notice. See Gov't MSJ at 19 (formatting altered). And it sat by as briefing wrapped up and this case hurtled toward final judgment.

On August 14, the Court granted summary judgment in both cases for the drug companies based on their source-of-aid argument. See Amgen, 2026 WL 2364336, at *1. It found that the record made plain that "only one entity received grant funding from the . . . state" — Sagebrush — and that "the clinics received their qualifying funding through Sagebrush, not through the states." Id. at *4. The Court thus ordered that the certifications be set aside and that the Government "not recertify any of the clinics based on funds received through Sagebrush or another private entity." Id. at *5. Twenty-eight days later, on September 11, Sagebrush filed these Motions to Intervene in order to seek reconsideration of the Court's judgment, or, in the alternative, to request that the judgment be altered or amended, and/or to appeal. See Mot. at 2–

3, 12, 17; Genentech, No. 25-290, ECF No. 37-1 (Motion to Intervene) at 2–3, 12, 17. Not surprisingly, Plaintiffs and the Government both oppose. See Amgen, No. 24-3571, ECF Nos. 54 (Amgen Opp.), 58 (Gov't Opp.); Genentech, No. 25-290, ECF Nos. 42 (Genentech Opp.), 46 (Gov't Opp.).

While these Motions were being briefed, Sagebrush, though a non-party, filed a notice of appeal from the Court's Order granting Plaintiffs' Motion for Summary Judgment. See No. Amgen, 24-3571, ECF No. 56 (NOA); Genentech, No. 25-290, ECF No. 44 (NOA); but see Campaign Legal Ctr. v. Fed. Election Comm'n, 68 F.4th 607, 611–12 (D.C. Cir. 2023) (dismissing merits appeal by proposed intervenor who was denied right to intervene, as there was no "proper appellant"). Two weeks later, the Government also appealed. See Amgen, No. 24-3571, ECF No. 61 (Gov't NOA); Genentech, No. 25-290, ECF No. 49 (Gov't NOA).

## II. Legal Standard

Federal Rule of Civil Procedure 24 governs intervention as of right and permissive intervention. Both types of intervention have the same "threshold" requirement: the motion must be timely. United States v. Brit. Am. Tobacco Austl. Servs., Ltd., 437 F.3d 1235, 1238 (D.C. Cir. 2006); see Fed. R. Civ. Pro. 24(a), (b); Hodgson v. United Mine Workers of Am., 473 F.2d 118, 129 (D.C. Cir. 1972) ("[T]imeliness is a prerequisite to any claim for intervention under Rule 24."). "The timeliness requirement forces interested non-parties to seek to intervene promptly so as not to upset the progress made toward resolving a dispute." Grochocinski v. Mayer Brown Rowe & Maw, LLP, 719 F.3d 785, 797 (7th Cir. 2013). "If the motion is untimely, the explicit language of the rule dictates that 'intervention must be denied.'" Amador Cnty. v. U.S. Dep't of the Interior, 772 F.3d 901, 903 (D.C. Cir. 2014) (quoting NAACP v. New York, 413 U.S. 345, 365 (1973)).

Whether a motion is timely is committed to the "sound discretion" of the district court, which must judge timeliness by considering "all the circumstances." NAACP, 413 U.S. at 366. "'The most important circumstance relating to timeliness' is whether a party 'sought to intervene as soon as it became clear' that its 'interests would no longer be protected by the parties in the case.'" Campaign Legal Ctr., 68 F.4th at 610 (quoting Cameron v. EMW Women's Surgical Ctr., P.S.C., 595 U.S. 267, 279–80 (2022)) (cleaned up). Courts also weigh "the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case" if the motion were to be granted. Id. (citation omitted). There is a "strong presumption against post-judgment intervention." Id. at 611; see also Associated Builders & Contractors, Inc. v. Herman, 166 F.3d 1248, 1257 (D.C. Cir. 1999) ("A motion for intervention after judgment will usually be denied where a clear opportunity for pre-judgment intervention was not taken.") (cleaned up).

## III. Analysis

Before it can reach the merits of the Motions to Intervene, the Court has an "obligation to satisfy itself of its own jurisdiction" to decide them. Dominguez v. UAL Corp., 666 F.3d 1359, 1362 (D.C. Cir. 2012) (quotation marks and citation omitted).

### A. Jurisdiction

Generally, when a party files a notice of appeal, it "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). Does the Griggs principle divest this Court of jurisdiction to adjudicate the Motions to Intervene, given that at least the Government has effectuated a proper notice of appeal? To date, the D.C. Circuit has yet to answer that question. Herman, 166 F.3d at 1256–57 (reserving question). Some of its sister

circuits have, however, and have generally adopted the broad rule that courts may not entertain requests to intervene once an appeal has been filed. Amarin Pharms. Ireland Ltd. v. FDA, 139 F. Supp. 3d 437, 440–41 (D.D.C. 2015) (collecting cases).

The Court need not definitively decide whether the Griggs principle applies to such a motion, however. Even if it does, the rule has numerous exceptions — one of which is applicable here. District courts in this circuit have long held that, although courts lack "jurisdiction to grant relief while a case is pending on appeal," they may "deny such relief without a remand from the appellate court." Humane Soc'y of U.S. v. Johanns, 2007 WL 1810103, at *3 (D.D.C. June 21, 2007) (first emphasis added); see also West v. Holder, 309 F.R.D. 54, 56 (D.D.C. 2015) (same); cf. Fed. R. Civ. P. 62.1(a) ("If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . deny the motion."). That exception has logical force to it, especially as applied to intervention motions. Where a court is prepared to deny the intervention motion anyway, there is little concern that such denial would risk altering the case as it stands before the court of appeals — the original concern animating the Griggs principle. See In re Jones, 768 F.2d 923, 931 (7th Cir. 1985) (explaining that Griggs is designed "to keep the district court and the court of appeals out of each other's hair") (Posner, J., concurring). Perhaps for that reason, at least one district court here has concluded that it had the authority to deny a motion to intervene while an appeal was pending. Campaign Legal Ctr. v. FEC, 2022 WL 1978727, at *1 n.1 (D.D.C. June 6, 2022) (citing Fed. R. Civ. P. 62.1(a)), aff'd, 68 F.4th 607 (D.C. Cir. 2023) (affirming without questioning district court's jurisdiction); cf. Ali v. City of Chicago, 34 F.4th 594, 598–599 (7th Cir. 2022) (not questioning district court's jurisdiction to "den[y] . . . motion to intervene" while "appeal was pending" and affirming denial on timeliness ground).

The Court follows that wise course here. For the reasons explained below, it concludes that it must deny the Motions as untimely. The Court therefore has jurisdiction to consider the requested relief and deny it.

B. Merits

The Court assesses each of the timeliness considerations, beginning with the most important — the amount of time that elapsed between when it became apparent that the proposed intervenor's interests were imperiled and when Sagebrush filed its Motions.

1. *Time Elapsed*

First and most importantly, Sagebrush did not seek to intervene as soon as it became clear that the Government was not (allegedly) adequately representing its interests. See Cameron, 595 U.S. at 280. That is manifest from Sagebrush's own theory of intervention. It seeks to intervene on the ground that the Government diverged from Sagebrush when it opted not to "meaningfully address [Plaintiffs'] 'source-of-aid' argument" in its "opposition brief and cross-motion" for summary judgment. See Mot. at 12. In particular, Sagebrush takes issue with the fact that the Government did not challenge the key assumption underlying Plaintiffs' argument — "as Sagebrush would have and does now" — about how to interpret the word "through" in 42 U.S.C. § 256b(a)(4)(K). See Mot. at 12; ECF No. 55 (Reply) at 3–4.

At the risk of stating the obvious, that apparent cleavage between Sagebrush and the Government was laid bare by the Government's combined opposition and cross-motion for summary judgment, which was filed on April 24. See Amgen, No. 24-3571, Gov't MSJ; Mot. at 12 (citing Gov't MSJ at 19 as source of divergence). In other words, accepting Sagebrush's theory of divergence as true, such split was evident to any reasonable observer about four months before the Court ruled on Plaintiffs' Motion for Summary Judgment. Sagebrush's failure to act

on such a "clear opportunity for pre-judgment intervention" therefore weighs heavily against timeliness. Herman, 166 F.3d at 1257 (citation omitted); see, e.g., United States v. Google LLC, 2025 WL 880552, at *3 (D.C. Cir. Mar. 21, 2025) (concluding that motion to intervene filed 76 days after divergence of interests became clear was untimely).

Sagebrush sees things differently. It insists that its Motions are timely because it became clear that the Government's interests had diverged from its own only "after the Court's Order." Reply at 8; see Mot. at 2 ("[U]ntil the Court's decision, its interests appeared aligned with, and adequately represented by, the Government."). Specifically, Sagebrush contends that it realized only in "hindsight" that "HRSA's arguments on the source-of-aid issue" were "inadequate," as the Court's Order made those deficiencies "apparent." Reply at 8.

That argument does not persuade. Even if the Court credits Sagebrush's assertions, the relevant question is not when it in fact became clear to Sagebrush that the Government's interests had diverged from its own, but rather when the company "should have known" that its interests might be imperiled by the Government's litigating positions. Amador Cnty., 772 F.3d at 904 (citation omitted); see also id. at 905 (affirming denial of intervention as untimely where movant claimed "that its suspicion of inadequate representation became a reality" only after conclusion of merits). Put another way, the inquiry is an objective one, not a subjective one. See, e.g., Google, 2025 WL 880552, at *3 (evaluating when divergence in interests was "clear" by asking what interested party should have "reasonably expected" given litigation developments); In re Efron, 746 F.3d 30, 35 (1st Cir. 2014) ("[T]he most important factor is the length of time that the putative intervenor knew or reasonably should have known that his interest was imperilled [*sic*] before he deigned to seek intervention."); Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999) ("The crucial date for assessing the timeliness of a motion to intervene is when proposed

intervenors should have been aware that their interests would not be adequately protected by the existing parties.").

Even if Sagebrush did not clock the inadequacy of the Government's briefing on the source-of-aid issue until after the Court's Order, it should have done so the moment that the brief was filed. The Government's briefing made it abundantly clear that it was not advancing Sagebrush's statutory argument and that it had chosen to devote only limited space to Plaintiffs' source-of-aid argument. No reasonable observer "could have missed the implications" for Sagebrush's position on the source-of-aid argument. Grochocinski, 719 F.3d at 798 (rejecting proposed intervenor's argument that he did not realize his interests were undermined until district court granted summary judgment as one rooted in "willful[] blind[ness]"). Sagebrush cannot now claim subjective ignorance of the effect that the Government's briefing would have on its interest in seeing its statutory-interpretation stance vindicated. Cf. United States v. Taylor, 54 F.3d 967, 972 (1st Cir. 1995) ("[T]he law ministers to the vigilant, not to those who sleep upon perceptible rights.").

Sagebrush also insists that it could not have anticipated that the Court would choose to go off on the "narrow" source-of-aid ground when the parties "heavily briefed" more sweeping challenges to the 340B program. See Mot. at 2. Claiming ignorance on that score is also of no help to the company. The source-of-aid argument was no mere undercard in the litigation. Plaintiffs gave it pride of place in their introduction to their summary-judgment briefing and devoted distinct real estate to it on the merits. See Amgen MSJ at 2–3, 29–34; Genentech MSJ at 2–3, 32–37. And it should have hardly come as a surprise that this Court would want to resolve a case on narrow, rather than sweeping, grounds. See, e.g., Damus v. Nielsen, 2019 WL 1003440, at *1 (D.D.C. Feb. 28, 2019) ("The 'cardinal principle of judicial restraint' is that 'if it is not

necessary to decide more, it is necessary not to decide more.'") (quoting PDK Labs., Inc. v. DEA, 362 F.3d 786, 799 (D.C. Cir. 2004) (concurring opinion of Roberts, J.)); Cortes v. Nat'l Lab. Rels. Bd., 2024 WL 1555877, at *7 (D.D.C. Apr. 10, 2024) (same).

Sagebrush argues in the alternative that the alleged divergence of interests did not manifest until "it became apparent that HRSA was not seeking reconsideration or appeal" of the Court's Order. See Reply at 8; see also Mot. at 2 ("Only after the Order was issued, and the prospect arose that the Government would not appeal, did it become apparent that Sagebrush's interests were not adequately represented."). In so maintaining, it invokes Smoke v. Norton, 252 F.3d 468 (D.C. Cir. 2001), where the D.C. Circuit recognized that "a post-judgment motion to intervene" can be "timely" where it is motivated by the "prospect that the [party] might not appeal"; in such circumstances, "the potential inadequacy of representation came into existence only at the appellate stage." Id. at 471. Yet the Government has appealed the Court's order. See Amgen, No. 24-3571, Gov't NOA; Genentech, No. 25-290, Gov't NOA.

Sagebrush suggests that the Government still may not adequately advance the company's interests on appeal because it may "adhere to its previously briefed position." Reply at 3–4; see also id. at 6. That argument reveals how much "[t]his is not a case in which" the alleged deficiency in representation became apparent only at the appellate stage, but rather one in which such deficiency should have been apparent to any reasonably fastidious bystander at the summary-judgment-briefing stage. Campaign Legal Ctr., 68 F.4th at 610. Indeed, Sagebrush admits as much. In its own words, it is the "Government's prior positions" on Plaintiff's source-of-aid argument — reflected in its summary-judgment briefing — that are the problem. See Reply at 6. Considering that this purported deficiency came to light more than six months before

Sagebrush sought to intervene, the time elapsed cuts substantially against the timeliness of its current Motions.

2. *Remaining Considerations*

The remaining timeliness considerations — namely, the purpose of intervention, need to preserve rights, and prejudice to the original parties — also do not favor intervention. The Court does not dispute that Sagebrush's interest in its affiliates having 340B certification is implicated by this litigation. See Mot. at 9–12. In other words, it has a legitimate purpose for intervention. Whether intervention is necessary, however, is less clear. Sagebrush says that it needs to intervene to be able to seek appellate review of the Court's Order. See Mot. at 13. As discussed above, however, appeal "is precisely what" the Government has done "at this point." Ctr. for Biological Diversity v. Raimondo, 2021 WL 2823102, at *3 (D.D.C. July 7, 2021). Sagebrush protests that the Government will not be able to make the arguments on appeal that Sagebrush wishes it to make, given the Government's "waiver." Reply at 6; but see Keepseagle v. Perdue, 856 F.3d 1039, 1053 (D.C. Cir. 2017) (describing distinction between "forfeiture," which entails failure to timely assert a right, and "waiver," which requires intentional abandonment of known right). But it is not clear how Sagebrush's own intervention would remedy any such limitation, considering "any argument not raised by a party would not be preserved on appeal." Broidy Cap. Mgmt. LLC v. Muzin, 61 F.4th 984, 998 (D.C. Cir. 2023).

The company also contends that it needs to be able to intervene so that it can seek reconsideration of the Court's Order, thus protecting its "operational and financial interests" in "preserving the eligibility of [its affiliates] to participate in the 340B program." Mot. at 9; see Amgen, No. 24-3571, ECF No. 49-5 (Proposed Motion for Reconsideration); Genentech, No. 25-290, ECF No. 37-5 (Proposed Motion for Reconsideration). As an initial matter, it is doubtful

that the Court could even entertain Sagebrush's motion, given that the Government has filed a notice of appeal from the Order, thereby divesting the Court of jurisdiction over it. See LaRouche v. U.S. Dep't of Treasury, 112 F. Supp. 2d 48, 52 (D.D.C. 2000). In any event, it is not clear why intervention is needed to vindicate Sagebrush's interest, given that the company could simply reach an "agreement with its clinics" by which they would "receive funding directly from a state or local unit of government," rather than through Sagebrush's award. See Gov't Opp. at 10.

In any case, Sagebrush's need to intervene must be balanced against potential prejudice to the original parties, who have worked to carry this litigation through to final judgment. Amador Cnty., 772 F.3d at 904 (finding undue delay in seeking to intervene and prejudice outweighed plaintiff tribe's "need to intervene to maintain its sovereign immunity," despite being "significant factor" cutting in favor of intervention); Google, 2025 WL 880552, at *5 (finding "no error in the district court's [need] analysis" given "other, more important timeliness factors: [proposed intervenor]'s delay in filing its motion and the prejudice to the parties that would result"); Campaign Legal Center, 68 F.4th at 611 (weighing "purpose for which intervention was sought" against "prejudice" to parties).

Here, the prejudice to the parties would be both substantial and "unfair[]." Amador Cnty., 772 F.3d at 905 (emphasis omitted). Even assuming that the Court could consider the motions for reconsideration, doing so would require it to "revisit issues that ha[ve] already been decided." Roane v. Leonhart, 741 F.3d 147, 152 (D.C. Cir. 2014). Intervention in such circumstances is strongly disfavored because it would upset the parties' legitimate expectations in the finality of the judgment that they worked to secure. Campaign Legal Ctr., 68 F.4th at 611; see also Nat. Res. Def. Council v. Costle, 561 F.2d 904, 908 (D.C. Cir. 1977) (concluding

intervention was permissible in part because proposed intervenor "did not seek to reopen the settled issues"); 7C Wright & Miller's Federal Practice and Procedure § 1916 ("There is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant."); Campaign Legal Ctr. v. Fed. Election Comm'n, 2022 WL 2111560, at *5 (D.D.C. May 13, 2022) ("Parties deserve some level of finality and cannot be expected to litigate cases indefinitely.").

Adjudicating the motions would also require new factfinding and new briefing because Sagebrush seeks to "correct the factual record," Mot. at 15, and advance new legal arguments that the Government allegedly neglected to make. See Reply at 12. The "delay" and "extra cost" involved in both briefing and deciding the issues raised on reconsideration would itself prejudice both the Government and Plaintiffs. Mass. Sch. of L. at Andover, Inc. v. United States, 118 F.3d 776, 782 (D.C. Cir. 1997). Put simply, allowing Sagebrush to intervene "would serve only to return the parties to a stage of this litigation they thought was long over," "unduly interfer[ing] with the parties' right to a timely resolution of this matter." Ctr. for Biological Diversity, 2021 WL 2823102, at *3–4.

## IV. Analysis

After considering all the circumstances, the Court concludes that there is no reason to stray from the usual course here. Given Sagebrush's decision to pass on a clear opportunity to intervene before this case went to judgment, and the extent to which such intervention would prejudice the parties, its Motions are untimely and must be denied. Orders so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: November 19, 2026